United States District Court
District of Minnesota

| | |
|---|---|
| Jonathan D. Gibson,<br><br>　　　　Plaintiff,<br><br>v.<br><br>Consumer Portfolio Services, Inc., Ms. Stewart, Does 1-10,<br><br>　　　　Defendants. | Court file no. _____<br><br><br>**Complaint**<br><br>**JURY TRIAL DEMANDED** |

**Introduction**

1.  Plaintiff is suing the Defendant debt collectors because Defendants harassed Plaintiff during repeated collection calls, threatened to garnish Plaintiff's wages, threatened to negatively effect Plaintiff's credit, and discussed Plaintiff's personal financial matters with third-parties.

**Jurisdiction**

2.  Jurisdiction of this Court arises under 28 U.S.C. § 1331, 15 U.S.C. § 1692k(d), and 47 U.S.C. § 227 for the TCPA claims, which are predicated upon the same facts and circumstances that give rise to the federal causes of action. Injunctive relief is also available pursuant to the TCPA.

3.  This action arises out of Defendants' violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA") and the Telephone Consumer Protection Act ("TCPA") in their illegal efforts to collect a consumer debt from Plaintiff.

4. Venue is proper in this District because the acts and transactions occurred here, Plaintiff resides here, and Defendants transacts business here.

## Parties

5. Plaintiff Jonathan D. Gibson is a natural person who resides in Minneapolis, County of Hennepin, State of Minnesota, and is a "consumer" as defined by 15 U.S.C. § 1692a(3).

6. Defendant Consumer Portfolio Services, Inc. ("CPS") is a California corporation that operates from an address of P.O. Box 57071, Irvine, CA, 92619, Defendant CPS's registered agent in Minnesota is C T Corporation System Inc., 100 South Fifth Street, Suite 1075, Minneapolis, MN 55402. Defendant CPS is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

7. Defendant Ms. Stewart is a natural person that was employed by Defendant CPS at all relevant times, and is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

8. Defendants Does 1-10 are each a natural person that were employed by Defendant CPS at all relevant times, and are each a "debt collector" as defined by 15 U.S.C. § 1692a(6).

## Factual Allegations

*Background*

9. Defendant CPS attempted to collect from Plaintiff an alleged financial obligation that was primarily for personal, family or household purposes and is therefore a

"debt" as that term is defined by 15 U.S.C. § 1692a(5), namely, the alleged unpaid balance on an automobile credit agreement.

10. This alleged debt was consigned, placed or otherwise transferred to Defendant CPS for collection from Plaintiff.

11. Defendant CPS and the collectors employed by Defendant CPS have repeatedly and willfully contacted Plaintiff on his cellular telephone and each contact was a "communication[s]" in an attempt to collect a debt as that term is defined by 15 U.S.C. § 1692a(2) and violations of the FDCPA and TCPA.

*Plaintiff Attempts to Surrender the Car to Defendant CPS*

12. On or about July 2012, Plaintiff began receiving collection calls from Defendant CPS, and each call was a "communication" in an attempt to collect a debt as that term is defined by 15 U.S.C. § 1692a(2).

13. Plaintiff repeatedly explained to Defendant CPS's collector that he could not afford to pay the debt and offered to surrender the car to Defendant CPS, or words to that effect.

14. Plaintiff further explained that the car was currently sitting in the parking lot of his apartment building, but it could not sit there much longer, or words to that effect.

15. Plaintiff was told that Defendant CPS's collector did not want the car, they wanted money, or words to that effect.

16. Defendant CPS's collector told Plaintiff to sell the car, or words to that effect.

*Defendant CPS Continues to Call Plaintiff*

17. In or about August 2012, Plaintiff engaged in numerous telephone calls with Defendant CPS, and each call was a "communication" in an attempt to collect a debt as that term is defined by 15 U.S.C. § 1692a(2).

18. Defendant CPS requested payment from Plaintiff, who again explained he could not make a payment.

19. Plaintiff told Defendant CPS that he would be forced to sell the car for scrap, because it could not continue to sit in the parking lot of his residence.

20. Defendant CPS then told Plaintiff to try and find a buyer for the vehicle, or words to that effect.

21. Soon thereafter, Plaintiff informed Defendant CPS's collector that a buyer was interested in purchasing the vehicle for approximately $1,300, or words to that effect.

22. Defendants CPS's collector told Plaintiff that they didn't want $1,300, they wanted the entire amount.

23. At some point thereafter, Plaintiff sold the car for scrap and informed Defendant CPS that he had no choice but to sell it for scrap, or words to that effect.

24. Defendant CPS then requested the contact information for the scrap company and the building manager for Plaintiff's residence, so that they could confirm that the car was scrapped, or words to that effect.

25. Defendant CPS then again requested that Plaintiff make a payment.

26. As he had previously explained, Plaintiff stated he could not make a payment in that amount.

27. Soon thereafter, the call ended.

28. These calls were illegal attempts to collect this debt in violation of numerous and multiple provisions of the FDCPA, including but not limited to 15 U.S.C. §§ 1692d, 1692e, and 1692e(10), amongst others, as well as violations of the TCPA.

*Defendant CPS Threatens to Ruin Plaintiff's Credit*

29. In or about August 2012, Plaintiff received a collection call from Defendant CPS, and this call was a "communication" in an attempt to collect a debt as that term is defined by 15 U.S.C. § 1692a(2).

30. Defendant CPS's collector requested a payment of approximately $500 from Plaintiff, or words to that effect.

31. Plaintiff said he could not afford a payment of $500 or words to that effect.

32. Defendant CPS's collector told Plaintiff that they would ruin his credit, or words to that effect.

33. This call was an illegal attempt to collect this debt in violation of numerous and multiple provisions of the FDCPA, including but not limited to 15 U.S.C. §§ 1692d, 1692e, 1692e(5), 1692e(8), and 1692e(10), amongst others, as well as violations of the TCPA.

*Defendant CPS Harass Plaintiff's Girlfriend*

34. In or around August 2012, Plaintiff's girlfriend received a series of collection calls from Defendant CPS, and this call was a "communication" in an attempt to collect a debt as that term is defined by 15 U.S.C. § 1692a(2).

35. Defendant CPS's collector asked Plaintiff's girlfriend if she knew where the car was, or words to that effect.

36. Defendant CPS's collector told Plaintiff's girlfriend that they "needed it, we need to repossess it" or words to that effect.

37. Defendant CPS's collector told Plaintiff's girlfriend that Plaintiff's account was delinquent and they need to get information on the car, or words to that effect.

38. Plaintiff's girlfriend told Defendant CPS's collector to stop calling her, or words to that effect.

39. Plaintiff's girlfriend never asked Defendant CPS to call her, nor did she give them permission to call her.

40. Plaintiff's girlfriend received at least one call from Defendant CPS after she told them to stop calling her.

41. Plaintiff's girlfriend received at least one voicemail from Defendant CPS. In the voicemail, Defendant CPS stated they were attempting to collect a debt from Plaintiff, or words to that effect.

42. These calls were illegal attempts to collect this debt in violation of numerous and multiple provisions of the FDCPA, including but not limited to 15 U.S.C. §§

1692b(2), 1692b(3), 1692c(b), 1692d, 1692e, and 1692e(10), amongst others, as well as violations of the TCPA.

*Defendant CPS Tell Plaintiff's Co-Worker They Want to Repossess Plaintiff's Car*

43. On or about September 27, 2012, Defendant CPS called Plaintiff's workplace, and this call was a "communication" in an attempt to collect a debt as that term is defined by 15 U.S.C. § 1692a(2).

44. Defendant CPS's collector asked Plaintiff's co-worker if they could speak with Steven or Jonathan, or words to that effect.

45. Plaintiff's co-worker told Defendant CPS's collector that Plaintiff was not there, or words to that effect.

46. Defendant CPS's collector told Plaintiff's co-worker that they were trying to repossess Plaintiff's car, or words to that effect.

47. Soon thereafter, the call ended.

48. Shortly thereafter the above-described call, Plaintiff was contacted by his co-worker and learned about the collection call.

49. Plaintiff was upset that Defendant CPS had contacted his workplace and discussed his personal finances to at least one co-worker.

50. This call was an illegal attempt to collect this debt in violation of numerous and multiple provisions of the FDCPA, including but not limited to 15 U.S.C. §§ 1692b(2), 1692c(b), 1692d, 1692e, 1692e(5), and 1692e(10), amongst others, as well as violations of the TCPA.

*Defendant CPS Harasses Plaintiff*

51. On or about September 27, 2012, Plaintiff received a collection call from Defendant CPS, and this call was a "communication" in an attempt to collect a debt as that term is defined by 15 U.S.C. § 1692a(2).

52. Defendant CPS's collector requested a payment from Plaintiff and told Plaintiff he owed more than $2,400, or words to that effect.

53. Plaintiff asked Defendant CPS's collector why they were discussing his personal finances with his co-workers.

54. Defendant CPS's collector told Plaintiff "because you owe a debt" or words to that effect.

55. Plaintiff then asked Defendant CPS's collector if it was ok for them to harass him and tell his co-workers about his debt, or words to that effect.

56. Defendant CPS's collector told Plaintiff they could do that, or words to that effect.

57. Defendant CPS's collector again asked Plaintiff to make a payment, or words to that effect.

58. Plaintiff indicated he could not make a payment.

59. Defendant CPS's collector told Plaintiff "that's ok, we're going to send the paperwork to your workplace next Monday to start garnishing your wages," or words to that effect.

60. Plaintiff then ended the call.

61. After the call ended, Plaintiff felt depressed, worried, and anxious. Plaintiff was worried that his wages would be garnished and he would be unable to pay his rent and take care of his two-year-old son.

62. This call was an illegal attempt to collect this debt in violation of numerous and multiple provisions of the FDCPA, including but not limited to 15 U.S.C. §§ 1692d, 1692e, 1692e(2), 1692e(4), 1692e(5), and 1692e(10), amongst others, as well as violations of the TCPA.

*Defendant CPS Threatens to Send the Sheriff to Plaintiff's House*

63. On or about November 15, 2012, Plaintiff received a collection call from Defendant CPS, and this call was a "communication" in an attempt to collect a debt as that term is defined by 15 U.S.C. § 1692a(2).

64. Plaintiff spoke with an individual from Defendant CPS that identified herself as Ms. Stewart from the investigation team.

65. Defendant Ms. Stewart told Plaintiff she was calling because Plaintiff was concealing the vehicle, or words to that effect.

66. Plaintiff had repeatedly offered to surrender the car and had even told Defendant CPS where the car was located. In addition, after he was unable to sell the car at Defendant CPS's instruction, Plaintiff sold the car for scrap and informed Defendant CPS that he had done so.

67. Defendant Ms. Stewart told Plaintiff that was nothing in the record about the car being sold, or words to that effect.

68. Defendant Ms. Stewart told Plaintiff that she would have the sheriff come to his house and investigate where the car was, and the sheriff would also serve papers on Plaintiff, or words to that effect.

69. Defendant Ms. Stewart asked Plaintiff where his grandparents lived, because they intended to garnish his grandparents wages, or words to that effect.

70. Plaintiff asked if they could garnish his grandparents wages and Defendant Ms. Stewart said yes, or words to that effect.

71. Defendant Ms. Stewart told Plaintiff that their lawyer had filed something regarding a concealed vehicle, and the next step would be to garnish Plaintiff's wages, or words to that effect.

72. Plaintiff asked Defendant Ms. Stewart if they had to the right to harass him over such a small debt, or words to that effect.

73. Defendant Ms. Stewart told Plaintiff they did, or words to that effect.

74. Sometime thereafter, the call ended.

75. After the phone call, Plaintiff thought Defendant Mrs. Stewart was accusing him of committing a crime and that he would be arrested.

76. This call was an illegal attempts to collect this debt in violation of numerous and multiple provisions of the FDCPA, including but not limited to 15 U.S.C. §§ 1692d, 1692e, 1692e(1), 1692e(4), 1692e(5), 1692e(7), and 1692e(10), amongst others, as well as violations of the TCPA.

*Telephone Consumer Protection Act*

77. At all times relevant to this complaint, the Plaintiff was and is a "person" as defined by the TCPA 47 U.S.C. § 153(39).

78. At all times relevant to this complaint, Defendant CPS owned, operated, and/or controlled "customer premises equipment" as defined by the TCPA 47 U.S.C. § 153(16) that originated, routed, and/or terminated telecommunications.

79. Defendant CPS, at all times relevant to the complaint herein, engaged in "telecommunications" as defined by the TCPA 47 U.S.C. § 153(50).

80. Defendant CPS, at all times relevant to the complaint herein, engaged in "interstate communications" by the TCPA 47 U.S.C. § 153(28).

81. At all times relevant to this complaint, Defendant CPS have used, controlled, and/or operated "wire communications" as defined by the TCPA 47 U.S.C. § 153(59), that existed as instrumentalities of interstate and intrastate commerce.

82. At all times relevant to this complaint, Defendant CPS used, controlled, and/or operated "automatic telephone dialing systems" as defined by the TCPA 47 U.S.C. § 227(a)(1) and 47 C.F.R. 64.1200(f)(1).

*Illegal Auto-Dialed Collection Calls in Violation of the TCPA and FDCPA*

83. Within one (1) year immediately preceding the filing of this lawsuit, Defendant CPS telephoned Plaintiff's cellular phone on numerous occasions, in violation of the TCPA.

84. Upon information and belief, Plaintiff never provided his cell phone number to the original creditor for this debt or Defendant CPS, nor has he consented to calls from Defendant CPS on that number.

85. Without Plaintiff's prior express consent, Defendant CPS and it's collectors repeatedly called Plaintiff on his cell phone number using an automatic telephone dialing system to call his cell phone in an attempt to collect this alleged debt.

86. On numerous occasions, Plaintiff received a number of calls in a short time span from Defendant CPS.

87. During at least one of these calls, Plaintiff heard messages from Defendants CPS telling them to please wait until the call was connected to a representative, or there was a long silent pause before they disconnected the call.

88. During other times when Plaintiff did not answer these calls, Defendant CPS would leave an automated message that in part indicated that they were a debt collector and instructed them to call Defendant CPS back.

89. Defendant CPS's messages to Plaintiff were from a prerecorded and/or synthesized computer voice.

90. The aforementioned calls from Defendant CPS were sent to Plaintiff in willful violation of the TCPA and the FDCPA because Defendant CPS never obtained Plaintiff's prior express consent, and had no basis to believe that it had Plaintiff's prior express consent.

91. Defendant CPS's repeated autodialed collection calls to Plaintiff's cell phone, within the last one (1) years prior to filing this complaint, were illegal attempts to collect this debt in violation of numerous and multiple provisions of the FDCPA, including but not limited to 15 U.S.C. §§ 1692d, 1692d(5), 1692e, 1692e(10), and 1692f, amongst others.

92. Defendant CPS's repeated autodialed collection calls to Plaintiff's cell phone, within the last one (1) year prior to filing this complaint, were illegal and in violation of the TCPA, 47 U.S.C. § 227 et seq.

*Summary*

93. All of the above-described collection communications made to Plaintiff by Defendant CPS and other collection employees employed by Defendant, were made in violation of numerous and multiple provisions of the FDCPA and TCPA, including but not limited to all of the above mentioned provisions, amongst others.

94. Defendant CPS's actions as described herein left Plaintiff feeling upset, frustrated, angry, and anxious from the persistent and harassing telephone calls by Defendant.

**Respondeat Superior Liability**

95. The acts and omissions of the individual Defendants, and the other debt collectors employed as agents by Defendant CPS who communicated with Plaintiff as more further described herein, were committed within the time and space limits of their agency relationship with their principal, Defendant CPS.

96. The acts and omissions by these individuals and these other debt collectors were incidental to, or of the same general nature as, the responsibilities these agents were authorized to perform by Defendant CPS in collecting consumer debts.

97. By committing these acts and omissions against Plaintiff, these individuals and debt collectors were motivated to benefit their principal, Defendant CPS.

98. Defendant CPS is therefore liable to Plaintiff through the Doctrine of Respondeat Superior for the intentional and negligent acts, errors, and omissions done in violation of state and federal law by its collection employees, including but not limited to violations of the FDCPA and TCPA in their attempts to collect this debt from Plaintiff.

### Trial by Jury

99. Plaintiff is entitled to and hereby respectfully demand a trial by jury. US Const. Amend. 7; Fed. R. Civ. P. 38.

### Causes of Action

#### Count 1:
#### Violations of the Fair Debt Collection Practices Act
#### 15 U.S.C. §§ 1692 et seq.

100. Plaintiff incorporates the foregoing paragraphs as though fully stated herein.

101. The foregoing intentional and negligent acts and omissions of Defendant CPS and its agents, within the last one (1) year immediately preceding the filing of this Complaint, constitute numerous and multiple violations of the FDCPA

including, but not limited to, each and every one of the above-cited provisions of the FDCPA, 15 U.S.C. §§ 1692–1692p, with respect to Plaintiff.

102. As a result of Defendant CPS's violations of the FDCPA, Plaintiff is entitled to actual damages pursuant to 15 U.S.C. § 1692k(a)(1); statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A); and, reasonable attorney fees and costs pursuant to 15 U.S.C. § 1692k(a)(3) from Defendant herein.

**Count 2:**
**Violations of the Telephone Consumer Protection Act**
**47 U.S.C. §§ 227 et seq.**

103. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

104. Within the one year period immediately preceding this action, Defendant CPS made numerous calls to the Plaintiff's cellular telephone service using an automatic telephone dialing system in violation of the TCPA, 47 U.S.C. Section 227(b)(1)(A)(iii), and 47 C.F.R. 64.1200 (a)(1)(iii).

105. The acts and or omissions of Defendant CPS at all times material and relevant hereto, as described in this complaint, were done unfairly, unlawfully, intentionally, deceptively and absent bona fide error, lawful right, legal defense, legal justification or legal excuse.

106. As a causally-direct and legally proximate result of the above violations of the TCPA and the C.F.R., Defendant CPS at all times material and relevant hereto, as described in this Complaint, caused Plaintiff to sustain damages.

107. Defendant CPS did not have the prior express consent of Plaintiff to use an automatic telephone dialing system to call the Plaintiff's cellular telephone.

108. Defendant CPS made such calls willfully.

109. Under the 47 U.S.C. Section 227(b)(3)(B), Plaintiff is entitled to statutory damages under the TCPA of $500.00 per phone call made to Plaintiff.

110. Defendant CPS willfully and knowingly violated the TCPA, and as such Plaintiff is entitled to $1,500.00 per phone call made to Plaintiff pursuant to the 47 U.S.C. Section 227(b)(3).

111. Plaintiff is entitled to injunctive relief prohibiting Defendant CPS from contacting Plaintiff on his cellular phone using an automated dialing system pursuant to the 47 U.S.C. Section 227(b)(3)(a).

### Prayer for Relief

**Wherefore**, Plaintiff prays that judgment be entered against each Defendant for:

### Count 1:
### Violations of the Fair Debt Collection Practices Act
### 15 U.S.C. §§ 1692 et seq.

- statutory damages of $1,000.00, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

- actual damages pursuant to 15 U.S.C. § 1692k(a)(1) in an amount to be determined at trial;

- costs of litigation and reasonable attorney fees pursuant to 15 U.S.C. § 1692k(a)(3);

**Count 2:
Violations of the Telephone Consumer Protection Act
47 U.S.C. §§ 227 et seq.**

- for an award of statutory damages of $500.00 per call pursuant to 47 U.S.C. Section 227(b)(3)(B) against Defendants and for Plaintiff;

- for an award of treble damages of $1,500.00 per call pursuant to 47 U.S.C. Section 227(b)(3) against Defendants and for Plaintiff;

- for an injunction prohibiting Defendants from contacting Plaintiff on his cellular phone using an automated dialing system pursuant to the 47 U.S.C. Section 227(b)(3)(a); and

- for such other and further relief as may be just and proper.

Respectfully submitted,

**The Ryder Law Firm, LLC**

Date: June 1, 2013              s/Randall P. Ryder
Randall P. Ryder (#389957)
2701 University Avenue SE, #209
Minneapolis, MN 55414

phone • 612.424.3770
fax • 612.605.3247
e-mail • email@theryderlawfirm.com

Attorney for Plaintiff

## Verification of Complaint and Certification

STATE OF MINNESOTA )
) ss
COUNTY OF HENNEPIN )

Pursuant to 28 U.S.C. § 1746, Plaintiff Jonathan D. Gibson having first been duly sworn and upon oath, verifies, certifies, and declares as follows:

1. I am a Plaintiff in this civil proceeding.
2. I have read the above-entitled civil Complaint prepared by my attorneys and I believe that all of the facts contained in it are true, to the best of my knowledge, information and belief formed after reasonable inquiry.
3. I believe that this civil Complaint is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law.
4. I believe that this civil Complaint is not interposed for any improper purpose, such as to harass any Defendant(s), cause unnecessary delay to any Defendant(s), or create a needless increase in the cost of litigation to any Defendant(s), named in the Complaint.
5. I have filed this civil Complaint in good faith and solely for the purposes set forth in it.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: 6-1-13

_____
Jonathan D. Gibson